Leonard R. ESTON, Plaintiff,

v.

John F. VAN BOLT, Individually, Susan
Lindeman, Individually, Michael Alan
Schwartz, Individually, Defendants.

No. 89–CV–71724–DT.

United States District Court,
E.D. Michigan, S.D.

Jan. 23, 1990.

Jesse R. Odom, Detroit, Mich., for plaintiff.

John F. Van Bolt, Detroit, Mich., in pro per. and for defendant Susan Lindeman.

Sara Oltarz–Schwartz, Detroit, Mich., for defendant Schwartz.

## MEMORANDUM OPINION
## AND ORDER

ZATKOFF, District Judge.

This matter is currently before the Court on a motion for summary judgment filed by defendants John Van Bolt and Susan Lindeman and a motion for summary judgment filed by defendant Michael Schwartz.

### FACTS

Plaintiff is a lawyer, currently suspended, who was previously a practicing attorney in the State of Michigan. Defendant John Van Bolt was the Executive Director and General Counsel of the Attorney Discipline Board. Defendant Susan Lindeman was also employed by the Attorney Discipline Board as an office manager and secretary. Defendant Michael Schwartz was the Grievance Administrator of the Michigan Attorney Grievance Commission.

Plaintiff was suspended for a period of sixty (60) days based on findings of professional misconduct. (Attorney Discipline Board Case No. DP–146/84). The suspension was affirmed by the Attorney Discipline Board on February 7, 1986. Plaintiff filed an application for leave to appeal with the Michigan Supreme Court on February 24, 1986. Plaintiff's appeal of his suspension and his application for leave to appeal to the Michigan Supreme Court automatically stayed the sixty (60) day suspension. The Michigan Supreme Court denied plaintiff's application for leave to appeal on May 28, 1986. On that date, the Michigan Supreme Court entered its order of denial. The stay of plaintiff's suspension was automatically dissolved on May 28, 1986.

The plaintiff then violated his sixty (60) day suspension by practicing law in the Wayne County Circuit Court as counsel for a criminal defendant in a jury trial before the Hon. Maureen Reilly. As a result of investigations into this disciplinary violation, defendant Schwartz brought new disciplinary charges against plaintiff. (Attorney Discipline Board Case No. 24–87). This charge stemmed from plaintiff's violation of the sixty (60) day suspension order from Attorney Discipline Case No.

DP–146/84. Hearings on the new charges were held which resulted in a finding of misconduct because plaintiff violated his previously imposed sixty (60) day suspension order. The plaintiff was thereafter suspended for an additional three (3) years. This additional suspension was affirmed by the Attorney Discipline Board and the Michigan Supreme Court denied leave to appeal. *Grievance Administrator v. Eston*, 431 Mich. 1207 (1988). Plaintiff's three (3) year suspension became effective August 10, 1987.

Plaintiff filed this suit on May 30, 1989. Count I of the complaint alleges a violation of plaintiff's 14th amendment rights. Plaintiff claims that defendants failed to give him adequate notice of the effective date of his attorney suspension. Because of defendants' failure to give this adequate notice, defendant was suspended an additional three (3) years for practicing law while his license was suspended. Count II of the complaint alleges a violation of plaintiff's 5th amendment rights. Plaintiff claims that the charge of practicing law while his license was suspended was wrongfully brought by defendant Schwartz because it illegally subjected plaintiff to double jeopardy. Count III alleges a violation of plaintiff's civil rights pursuant to 42 U.S.C. §§ 1983, 1982 and 1981. Count IV of the complaint charges defendants with a violation of the Clayton Antitrust Act pursuant to 15 U.S.C. § 15(a).

Defendants' motions for summary judgment have been responded to by plaintiff. The Court now makes its ruling.

### LAW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Inc.,* 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

In his complaint, plaintiff essentially states that his civil and constitutional rights were violated because defendants failed to give him "notice of the effective date" of his sixty day suspension. Plaintiff claims that defendants had a ministerial duty to give such notice as part of their duties while employed by the Michigan Attorney discipline Board. According to plaintiff, defendants' failure to perform this ministerial duty violated the plaintiff's civil and constitutional rights. Because of defendants' failure to give adequate notice of suspension, plaintiff was charged with practicing law while still on suspension, resulting in the additional three (3) year suspension.

■ This Court finds that plaintiff's contentions are without merit. At all relevant times, defendants were employed by the Attorney Discipline Board or the Attorney Grievance Commission. The Attorney Discipline Board is the adjudicative arm of the Supreme Court for discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys. (See M.C.R. 9.110(A)). The Attorney Grievance Commission is the prosecution arm of the Supreme Court for discharge of its constitutional responsibility to supervise and discipline Michigan attorneys. (See M.C.R. 9.108(A)). As employees of these specific bodies, defendants were acting in their official capacity by either supervising or disciplining Michigan Attorneys pursuant to statute.

The basis of plaintiff's complaint can be broken down to the sole assertion that defendants failed to advise plaintiff that the May 28, 1986 order of the Michigan Supreme Court denying his application for leave to appeal, had the legal effect of suspending the plaintiff's license to practice law in Michigan. Plaintiff claims defendants had a ministerial duty to issue a notice of suspension to plaintiff indicating that his suspension was effective May 28, 1986.

The Court finds that plaintiff's complaint directly relates to the defendants' performance of their statutory duties as members of the Attorney Discipline Board or the Attorney Grievance Commission. Therefore, defendants are immune from liability for acts or omissions performed in this official capacity. Courts have extended immunity to persons who perform official functions in the prosecution of disciplinary

matters. *Ginger v. Wayne Circuit Court,* 372 F.2d 621 (6th Cir.1967), *cert. den.,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998 (1967). In *Ginger,* a disbarred Michigan attorney brought suit against the judges of a state circuit court and members of the Grievance Committee of the State Bar. Plaintiff had alleged damages for violations of the Civil Rights Act. The Sixth Circuit stated that

"with respect to the prayer for damages, it is clear that the defendants were acting within their statutory powers, and the proceedings were within their jurisdiction, wherefore, they are immune from liability for damages for any alleged violation of the Civil Rights Act."

*Ginger,* 372 F.2d at 625. In this instance, defendants are accused of violating plaintiff's civil rights in their acts or omissions as members of the Attorney Discipline Board and the Attorney Grievance Commission. Defendants were acting within their statutory powers and statutory duties as set forth in the Michigan Court Rules. (see M.C.R. 9.109(A) and 9.110(D)). Therefore, this Court finds that defendants are immune from liability for their official actions in the investigation and prosecution of the plaintiff, Leonard Eston.

The Michigan Court Rules specifically state that, "[the] administrator, legal counsel, investigators, members of hearing panels, the commission, the board and their staffs are absolutely immune from suit for conduct arising out of the performance of their duties." (M.C.R. 9.125).

Public policy requires absolute immunity for all persons—governmental or otherwise—who are integral parts of the judicial process. *Sparks v. Kentucky Character and Fitness Committee,* 818 F.2d 541, 543 (6th Cir.1987). In this instance, defendants are not state employees or governmental agents, but they do serve in a quasi-judicial fashion as the adjudicative and prosecutorial arm of the Supreme Court.

Case law has extended immunity to members of an attorney discipline committee, *Simons v. Bellinger,* 643 F.2d 774, 778 (D.C.Cir.1980); and to state bar associations conducting disciplinary proceedings,

*Clark v. State of Washington,* 366 F.2d 678 (9th Cir.1966). In *Clark,* the court found that a state bar association was an integral part of the judicial process where it had conducted disciplinary proceedings. The *Clark* court stated that,

[t]he key to the immunity previously held to be protective to the prosecuting attorney is that the acts, alleged to have been wrongful, were committed by the office in the performance of an integral part of the judicial process. (Citation omitted.) As an arm of the Washington Supreme Court in connection with disciplinary proceedings, the Bar Association is an "integral part of the judicial process" and is therefore entitled to the same immunity which is afforded to prosecuting attorneys in that state.

*Clark,* 366 F.2d at 681.

In *Simons,* the court found that members of a committee on unauthorized practice of law possessed some characteristics of an inherent judicial power and some characteristics of a prosecutor. These characteristics made the defendants in *Simons* immune because they were integral parts of the judicial process. *Simons,* 643 F.2d at 779.

It must be noted, however, that the *Simons* court referred to the holding of *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) in which the Supreme Court ruled that immunity may not be determined simply by resorting to status or titles. Instead, the Supreme Court's holding in *Butz* requires that the allegations against defendants and the nature of the defendants' work be examined in light of three factors. *Simons,* 643 F.2d at 779. These factors include whether the defendants' actions are comparable to those of a judge, whether those who participate in the adjudicative process are likely to become defendants in later suits brought by litigants embittered by the outcome in the original forum and finally, whether safeguards are built into the judicial process which are sufficient to eliminate the need for private damage actions as a means of curbing unconstitutional conduct. The Court will now apply each of these three

factors to the facts and circumstances of the case at bar.

## WHETHER DEFENDANTS' ACTIONS ARE COMPARABLE TO JUDICIAL FUNCTIONS

■ The complaint alleges defendant Schwartz illegally brought the second suit against plaintiff charging him with practicing law while his license was suspended. Defendant Schwartz was delegated the authority to decide when to prepare for and when to initiate the prosecution of plaintiff. This delegated authority is an inherent judicial function. Courts have held that a prosecutor's decision as to when to initiate a prosecution is sufficiently comparable to a judicial judgment so as to merit absolute immunity. *Simons*, 643 F.2d at 780, citing to *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Like a judge, the prosecutor was involved in the sensitive process of starting and stopping litigation. *Id.* In this instance, defendant Schwartz was performing his duties as the prosecutorial arm of the Supreme Court. Therefore, defendant Schwartz is immune from liability for his prosecution of plaintiff.

■ Defendants Van Bolt and Lindeman allegedly failed to give plaintiff "notice of his suspension" and therefore, denied plaintiff his right to procedural due process. As members of the Attorney Discipline Board, defendants were performing quasi-judicial functions delegated to them by the Michigan Supreme Court. As the adjudicative arm of the Supreme Court, defendants duties pertained to proceedings before the Attorney Discipline Board. Defendants' duties regarding preparation and distribution of notices in actions involving the Board are inherently judicial by nature.

## WHETHER OFFICIALS WHO PARTICIPATE IN THE PROCESS OF ADJUDICATION ARE LIKELY TO BECOME DEFENDANTS IN LATER SUITS

■ The *Simons* court found that some controversies are so intense that the loser in one forum will often seek a second fo-

rum in order to charge the participants in the first forum with unconstitutional animus. *Simons*, 643 F.2d at 781. The defendants in this instance are likely to become the targets of those persons affected by the actions of the Attorney Discipline Board and the Attorney Grievance Committee. According to the *Simons* court, those persons involved in the prosecution of attorneys are even more likely to become targets of harassing lawsuits than either judges or prosecutors. *Id.* at 782. Therefore, immunity is appropriate for defendants. Otherwise, their employment would no longer be a service to the legal profession, but rather an invitation to become a defendant in costly, time-consuming litigation.

## WHETHER SUFFICIENT SAFEGUARDS EXIST SO AS TO ELIMINATE THE NEED FOR PRIVATE DAMAGE ACTIONS

■ The Court finds that sufficient safeguards have been built into the judicial process so as to eliminate the need for private damage actions as a means of curbing unconstitutional conduct. Public hearings are held which are adversary in nature. Evidence is received and findings of fact are made in writing. Review can be obtained from the board and appeal can be made to the Michigan Supreme Court. In addition, members of the board and commission are appointed for 3–year terms and only serve two full terms.

After considering the above mentioned factors and concluding that defendants were acting within their statutory mandate, this Court finds that immunity is appropriate. Any other result would inhibit the defendants' ability to adequately function.

■ The Court further finds that plaintiff was not denied his constitutional rights to due process. The Michigan Attorney Discipline Board and the Michigan Supreme Court have ruled that plaintiff was not deprived of procedural due process. The Discipline Board and the Michigan Supreme Court ruled that plaintiff knew or should have known that the stay of his sixty (60)

day suspension was dissolved upon the entry of the State Supreme Court's order denying application for leave to appeal. In its February 8, 1988 order and opinion, the Attorney Discipline Board specifically ruled that there was no merit to plaintiff's argument that he did not have sufficient notice of the effective date of his sixty (60) day suspension. Thus, it was determined that plaintiff had no grounds to believe that a further stay was in effect. In addition, the Michigan Court Rules specifically state that the filing of a motion for reconsideration does not stay the effect of the order addressed in the motion. (M.C.R. 7.313(E)). Sub-chapter 9.100 of the Michigan Court Rules governs the discipline of attorneys. That rule does not require that notice of suspension be provided by the Attorney Discipline Board.

Plaintiff has not asserted that he communicated with the Attorney Discipline Board or the Michigan Supreme Court and was thereby misled regarding the status of his disciplinary suspension. Defendants have not prevented plaintiff from consulting the Court Rules to determine that a motion for reconsideration would not continue the stay which had been lifted by the Supreme Court's May 28, 1986 order. Therefore, this Court finds that plaintiff has failed to show or allege any acts or omissions by any of the defendants which would constitute reckless or malicious conduct. Plaintiff has failed to allege any actions by defendants which denied him procedural due process.

With regard to plaintiff's allegation that defendants violated the Clayton Anti-Trust Act, this Court finds that Act inapplicable in this instance. Plaintiff has failed to sufficiently allege a violation of the anti-trust laws. Furthermore, plaintiff is not in competition with the defendants and defendants do not compete amongst themselves. As a result, plaintiff has no standing to sue for anti-trust violations. *Ficker v. Chesapeake and Potomac Telephone Co.*, 596 F.Supp. 900, 905 (1984).

## CONCLUSION

Based upon the foregoing, this Court finds that no genuine issues of material fact exist regarding the alleged violations of plaintiff's constitutional and civil rights. Therefore, this Court hereby GRANTS the summary judgment motion of defendants Van Bolt and Lindeman. The Court also GRANTS the summary judgment motion of defendant Schwartz.

IT IS SO ORDERED.