JOHN O. FREY AND THERESA NELSON, PERSONAL REPRESENTATIVES OF THE ESTATE OF GRACE L. CHASE, DECEASED, APPELLANTS, V. THE BLANKET CORPORATION, A NEBRASKA CORPORATION, ET AL., APPELLEES.

582 N.W.2d 336

Filed July 24, 1998.    No. S-97-482.

Timothy J. Cuddigan and Lisa M. Line, of Brodkey, Cuddigan & Peebles, for appellants.

John B. Henley, of Katskee, Henatsch & Suing, for appellee Virginia G. Johnson.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

This is a wrongful death action brought by the personal representatives of the estate of Grace L. Chase, deceased, against several parties, including Virgina G. Johnson, the person who served as Chase's guardian prior to her death. The personal representatives, Theresa Nelson and, previously, John O. Frey, appeal from an order of the district court for Lancaster County granting the guardian's motion for summary judgment upon determining that she was entitled to quasi-judicial immunity. We conclude that Johnson is not entitled to quasi-judicial immunity and, therefore, reverse the order and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

By order entered on December 22, 1992, the Lancaster County Court appointed Johnson as successor guardian and successor conservator for Chase, an adult who was incapacitated by chronic mental illness. The court issued letters of guardianship to Johnson on February 4, 1993. Upon Chase's discharge from the Hastings Regional Center, Johnson arranged for her placement at a residential facility operated by The Blanket Corporation and its administrator, Philip H. Colley. While residing at this facility, Chase was assaulted by her roommate and died as the result of her injuries on April 16, 1994.

This action was filed by the personal representative of Chase's estate on October 18, 1995. The original defendants were The Blanket Corporation and Colley. Johnson was added as a defendant in a second amended petition filed on April 12, 1996. In this pleading, the personal representative alleged that the "violent temperament" of Chase's assailant was known to the defendants prior to the assault. The personal representative further alleged that Chase's death was proximately caused by the negligence of the defendants in several particulars, including an allegation that Johnson "did fail to adequately supervise the placement of Grace L. Chase in a safe living environment and did fail to adequately supervise the living conditions and placement of Grace L. Chase in a safe place." Johnson's answer included a general denial and an allegation that the second amended petition failed to state a cause of action against her in any capacity.

Johnson filed a motion for summary judgment based on the theory that as Chase's court-appointed guardian she was entitled to quasi-judicial immunity. The district court granted the motion based upon the following reasoning:

> A guardian of an incapacitated person is appointed by the court. *See* Neb. Rev. Stat. sec. 30-2620. At the time of the appointment the court may adjust the responsibilities and authority of the guardian with respect to all statutorily defined powers. *Id.* Therefore, in selecting the ward's abode, a duty established by statute and delegated by the court, Ms. Johnson was fulfilling a quasi-judicial function and therefore is entitled to absolute immunity for suits for negligence based on such activity.

. . . The courts appoint a guardian only after a judicial hearing has been held and a determination is made that an individual is incapable of administering his or her own affairs. Thus, guardians render a service not only to the courts, the incapacitated person's family and the community at large, but more importantly to the incapacitated person.

The personal representative perfected a timely appeal, and pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court, we removed the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Restated, the personal representative's assignments of error contend that the district court erred in finding that the guardian was immune from suit and in granting the guardian's motion for summary judgment.

## SCOPE OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998); *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998).

With respect to questions of law, an appellate court has an obligation to reach a conclusion independent of the determination made by the court below. See, *Schram Enters. v. L & H Properties*, 254 Neb. 717, 578 N.W.2d 865 (1998); *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998); *State v. Howard*, 253 Neb. 523, 571 N.W.2d 308 (1997).

## ANALYSIS

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494

(1998); *Barnett v. Peters, supra*; *Chalupa v. Chalupa, supra.* The question of law presented in this case is one of first impression in Nebraska, that is, whether a guardian for an incapacitated person appointed pursuant to Neb. Rev. Stat. § 30-2620 (Reissue 1995) is entitled to quasi-judicial immunity with respect to a civil action for damages arising from the selection of the ward's place of abode by the guardian. An appropriate starting point for this analysis is a review of the development of this form of immunity under Nebraska law.

As a general rule, judges are immune from civil actions for damages for acts performed in the course of their official functions and judicial capacity. *Koepf v. County of York*, 198 Neb. 67, 251 N.W.2d 866 (1977). See, also, *Jeffres v. Countryside Homes*, 214 Neb. 104, 333 N.W.2d 754 (1983). In certain situations, this immunity has been extended to individuals who are not judges, but who perform functions which are closely related to the judicial process. We have stated this rule as follows:

> " 'Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption.' "

*Koch v. Grimminger*, 192 Neb. 706, 709, 223 N.W.2d 833, 835 (1974) (quoting *Allen v. Miller*, 142 Neb. 469, 6 N.W.2d 594 (1942)). See, also, *Billups v. Scott*, 253 Neb. 287, 571 N.W.2d 603 (1997); *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76 (1993). We have also held that quasi-judicial immunity exists for officials acting in a ministerial capacity in obedience of a process regular and valid on its face issuing from a court or tribunal with apparent jurisdiction to issue the same. See, *Billups v. Scott, supra*; *Gallion v. Woytassek, supra*; *Jeffres v. Countryside Homes, supra*; *Koepf v. County of York, supra.*

Quasi-judicial immunity from any suit or damages based upon the performance of duties within a person's authority attaches to particular official functions, not to particular offices. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839

(1996). We have stated that in determining whether to grant quasi-judicial immunity, "courts examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Billups v. Scott*, 253 Neb. at 290, 571 N.W.2d at 605.

Applying these principles, we have extended quasi-judicial immunity to a public prosecutor acting within the general scope of his official authority in deciding whether to file criminal charges, *Koch v. Grimminger, supra*; a sheriff who removed a child from the custody of his mother and delivered him to a county welfare department pursuant to a court order, *Koepf v. York County, supra*; and a psychiatrist directed by a court to evaluate an accused for the purpose of determining his competency to stand trial, *Gallion v. Woytassek, supra*. On the other hand, we have held that quasi-judicial immunity does not extend to a municipal court constable alleged to have negligently damaged a motor home while transporting it pursuant to a writ of restitution, reasoning that law enforcement officers are not relieved from liability for acts of negligence, but are subject to the same standards of care applicable to civilians. *Jeffres v. Countryside Homes, supra*. Similarly, in *Talbot v. Douglas County, supra*, we held that a county attorney who agreed to represent a party attempting to collect child support payments was not entitled to quasi-judicial immunity in an action alleging that he was negligent in the performance of that undertaking because he acted as an advocate and not in a quasi-judicial capacity.

Most recently, we held that a person appointed as a guardian ad litem for a minor in a dissolution or juvenile court proceeding serves a quasi-judicial function and, therefore, is entitled to absolute immunity from any suit for damages based upon the performance of duties within the scope of the guardian ad litem's authority. *Billups v. Scott, supra*. In reaching that conclusion, we relied in part upon the reasoning in *Short by Oosterhous v. Short*, 730 F. Supp. 1037 (D. Colo. 1990). In that case, the court noted that custody cases often become intensely personal and militant clashes and that the objectivity of the guardian ad

litem in taking a position on the minor's behalf which may be contrary to the wishes of the minor or a parent would be impaired if the guardian were subject to potential civil liability.

In the present case, the guardian was appointed pursuant to § 30-2620, a provision of the Uniform Probate Code (UPC) as enacted by our Legislature in 1974. Neither side has provided us with authority from any jurisdiction on the issue of whether a guardian so appointed has quasi-judicial immunity in an action alleging negligent performance of the duties enumerated in the UPC, nor has our research revealed any such authority. *Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989), which was cited by the district court, involved a claim against a guardian ad litem for a minor child in a divorce proceeding and, therefore, is not directly applicable to the issue before us.

Recalling that it is the nature of the function which determines whether quasi-judicial immunity attaches to the person performing the function, we examine the role of a guardian for an incapacitated person as defined by the UPC. It is undisputed that the guardian selected the place of abode at which Chase sustained her fatal injury, and it is that decision which forms the basis of the personal representative's claim. In this regard, Neb. Rev. Stat. § 30-2628 (Reissue 1995) provides in pertinent part:

(a) A guardian of an incapacitated person has only the powers specified in the letters of guardianship based on the court's specific findings of incapacity. With regard to those specified powers, *the guardian of an incapacitated person has the same rights and duties respecting his or her ward that a parent has respecting his or her unemancipated minor child*, except that a guardian is not liable to third persons for acts of the ward solely by reason of the parental relationship. In particular, and without qualifying the foregoing, a guardian may be delegated the following powers and duties, except as may be modified by order of the court:

(1) To the extent that it is consistent with the terms of any order by a court of competent jurisdiction relating to detention or commitment of the ward, he or she is entitled to custody of the person of his or her ward and may establish the ward's place of abode within or without this state.

(Emphasis supplied.) In the present case, the letters of guardianship provided that the guardian was "authorized and empowered to exercise all powers as guardian" with the exception of paying compensation to herself without first obtaining a court order, and was "charged with all responsibilities and duties of guardian." We further note that Neb. Rev. Stat. § 30-2627(e) (Reissue 1995) authorizes the county court to require a guardian to furnish a bond in an amount conditioned upon faithful discharge of his or her duties, and Neb. Rev. Stat. § 30-2622 (Reissue 1995) provides that termination of the guardianship does not affect the guardian's "liability for prior acts."

While the statutorily defined power of a guardian to select a place of abode for an incapacitated person is conferred by court order and letters of guardianship, we are not persuaded that this factor alone is sufficient to characterize the function as quasi-judicial in nature. We note that while conservators are appointed by a court pursuant to the UPC in essentially the same manner as guardians, they are subject to civil liability to the protected person where their actions deviate from the standard of care set forth in Neb. Rev. Stat. § 30-2813 (Reissue 1995). *In re Conservatorship of Estate of Martin*, 228 Neb. 103, 421 N.W.2d 463 (1988). Unlike the functions of a guardian ad litem, prosecutor, or court-appointed expert, the role of a guardian in selecting a residence for an incapacitated ward is not closely related or ancillary to a court's adjudication of a particular matter.

The statutory characterization of the guardian's duty to an incapacitated ward as equivalent to that owed by a parent to an unemancipated minor child lends support to the view that in selecting a ward's place of abode, a guardian is not performing a quasi-judicial function. This characterization is also relevant to our consideration of whether exposure to liability might impair the appropriate exercise of the guardian's functions and thus justify a grant of immunity. Generally, "an unemancipated minor . . . cannot maintain an action against his parent, *or any other person standing in that relation to the minor,* to recover damages for negligence." (Emphasis supplied.) *Pullen v. Novak,* 169 Neb. 211, 223, 99 N.W.2d 16, 25 (1959). (Emphasis supplied.) See, also, *Wicker v. City of Ord,* 233 Neb. 705, 447 N.W.2d 628 (1989). We recognized in *Clasen v. Pruhs,* 69 Neb.

278, 95 N.W. 640 (1903), and reaffirmed in *Pullen v. Novak*, 169 Neb. at 223, 99 N.W.2d at 25, that a minor may recover in tort only for " 'brutal, cruel, or inhuman treatment' " inflicted by a parent or person standing in loco parentis. Thus, quasi-judicial immunity is not necessary to enable a guardian for an incapacitated person to perform his or her functions without the threat of liability for ordinary negligence, because the guardian cannot have such liability by virtue of the quasi-parental nature of the guardian's duty as set forth in § 30-2620. For these reasons, we conclude that the guardian is not entitled to quasi-judicial immunity under the facts presented.

A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that it is entitled to a judgment if the evidence were uncontroverted at trial. If such a showing is made, the opposing party has the burden to produce evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. However, if a prima facie showing is not made, the opposing party is not required to reveal evidence which he or she expects to produce at trial to prove the allegations contained in his or her petition. *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998); *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645 (1997). In the present case, the guardian presented no evidence which, if uncontroverted, would demonstrate that she is entitled to judgment as a matter of law in the absence of immunity. We therefore reverse the order and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.