WARREN H. NOFFSINGER ET AL., APPELLANTS, V.
NEBRASKA STATE BAR ASSOCIATION, APPELLEE.
622 N.W. 2d 620

Filed February 9, 2001.   No. S-99-1080.

Frank B. Morrison, Jr., of Morrisons, McCarthy & Baraban, for appellants.

Robert T. Grimit, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Appellants Warren H. Noffsinger, individually and doing business as Rush Creek Ranch; Terry B. Noffsinger, doing business as Rush Creek Ranch; Warren, Terry, and Thomas H. Noffsinger, as cotrustees of the Audrey M. Noffsinger Trust; J.R. Brown; and BSM Technologies, Inc., filed an appeal from the trial court's order sustaining the demurrer of appellee Nebraska State Bar Association. Appellants filed a petition

alleging negligence by appellee, through the conduct of the Counsel for Discipline, in failing to investigate the misconduct of former attorney Terrence D. Malcom. Appellants claim that this failure resulted in Malcom's later conversion of appellants' money. The trial court sustained appellee's demurrer on the ground that appellants did not have standing to sue and did not rule on the other grounds. Appellants filed an appeal from this order. For the reasons stated below, we affirm the trial court's order sustaining the demurrer.

## BACKGROUND

Appellants allege that they were clients of Malcom, an attorney practicing law in Red Willow County, Nebraska, in 1995 and 1996. Noffsingers allege that on December 15, 1995, and January 4, 1996, Malcom received funds in his capacity as their attorney and that those funds were illegally converted to the use of Malcom, thereby permanently depriving Noffsingers of those funds in the sum of $245,000. Brown alleges that on July 3, 1996, Brown delivered the sum of $150,000 to Malcom as Brown's attorney and that Malcom converted this money, thereby permanently depriving Brown of it. Noffsingers and Brown obtained judgments against Malcom in the sum of $245,000 and $150,000 respectively, but neither of these judgments has been paid.

Appellants allege that in September 1993, prior to the above-described events, the law firm where Malcom was a partner discovered that Malcom had been stealing money from the firm and immediately reported the theft to the Counsel for Discipline of appellee. According to appellants, the Counsel for Discipline failed to require Malcom to file an accounting after the reported theft from his law firm and no investigation was done of the alleged theft. Appellants claim that the Counsel for Discipline did not request trust account statements, even though the law firm had reported to him that it had reason to believe that Malcom was out of trust and had engaged in theft. Appellants allege that the Counsel for Discipline was acting within the scope and course of his employment with appellee and that he is charged by law with the responsibility of investigating the merits of the allegations and reporting his findings to the Supreme

Court so that an order of temporary suspension could be issued. Appellants allege that the Counsel for Discipline failed to fulfill this duty and that this failure allowed Malcom to continue to practice law through 1996 without the public's being informed of his criminal propensity. As a result, Malcom was in a position to and did convert appellants' funds.

Appellee demurred to appellants' petition on four grounds: (1) that appellants lacked standing to sue, (2) that appellee and its employees and agents are immune from the claims set forth in the petition, (3) that the petition does not state facts sufficient to constitute a cause of action, and (4) that the trial court has no jurisdiction of the subject of this action. The trial court sustained appellee's demurrer on the basis of standing but did not rule on the other grounds asserted. From this order, appellants filed an appeal.

## ASSIGNMENT OF ERROR

Appellants claim as their sole assignment of error that the trial court erred in sustaining appellee's demurrer.

## STANDARD OF REVIEW

■ In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Danler v. Rosen Auto Leasing*, 259 Neb. 130, 609 N.W.2d 27 (2000).

■ Where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *White v. Board of Regents*, 260 Neb. 26, 614 N.W.2d 330 (2000); *Phipps v. Skyview Farms*, 259 Neb. 492, 610 N.W.2d 723 (2000); *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000).

## ANALYSIS

■ Appellants argue that because the trial court sustained appellee's demurrer on the basis of standing alone, this court should address only that issue on appeal. An order sustaining a demurrer will be affirmed if any one of the grounds on which it

was asserted is well taken. *Drake v. Drake*, 260 Neb. 530, 618 N.W.2d 650 (2000); *Prokop v. Hoch*, 258 Neb. 1009, 607 N.W.2d 535 (2000); *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343 (1998). Thus, on appeal, we may consider any of the four grounds asserted by appellee below, provided that they are proper grounds for demurrer under Neb. Rev. Stat. § 25-806 (Reissue 1995).

■ Appellee asserted immunity below as an alternative ground for demurrer. The asserted ground of immunity in this case is jurisdictional. See *King v. State*, 260 Neb. 14, 614 N.W.2d 341 (2000) (holding that because state had not waived its sovereign immunity, district court lacked jurisdiction). Under § 25-806(1), lack of jurisdiction is a proper ground for demurrer. Accordingly, we address the issue of immunity.

■ Neb. Ct. R. of Discipline 22(B) (rev. 1996), regarding immunity and privileges, states that "[t]he Counsel for Discipline, his or her representatives, and members of [the Disciplinary Review] Board and Committees [on Inquiry] shall be immune from suit for any conduct in the course of their official duties under these Rules." The Counsel for Discipline's immunity exists not merely by rule; rather it derives from the common-law immunity possessed by judges for the performance of judicial functions. As a general rule, judges are immune from civil actions for damages for acts performed in the course of their official functions and judicial capacity. *Frey v. Blanket Corp.*, 255 Neb. 100, 582 N.W.2d 336 (1998); *Koepf v. County of York*, 198 Neb. 67, 251 N.W.2d 866 (1977). In certain situations, this immunity has been extended to individuals who are not judges, but who perform functions which are closely related to the judicial process. *Frey v. Blanket Corp., supra*. The rule is that where an officer is invested with discretion and is empowered to exercise his or her judgment in matters brought before the officer, he or she is sometimes called a quasi-judicial officer and when so acting, is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority and without willfulness, malice, or corruption. *Id.* However, quasi-judicial immunity from any suit or damages based upon the performance of duties within a person's

authority attaches not to particular offices, but to particular official functions. *Id.*

The question becomes whether the functions of the Counsel for Discipline performed in this case are judicial functions. In determining whether to grant quasi-judicial immunity, courts examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted and seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. *Id.*

■■■ To determine whether the Counsel for Discipline's functions are judicial in nature, we must first determine their source. The Nebraska Constitution vests the judicial power of the state in the Supreme Court. Neb. Const. art. II, § 1, and art. V, § 1. As we have stated previously, when the Supreme Court was created, it brought with it inherent powers, i.e., powers that are essential to the existence, dignity, and functions of the court from the very fact that it is a court. *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N.W. 265 (1937). Among those powers are the powers to admit and discipline attorneys. *Id.* "The matter of the admission, suspension, discipline and disbarment of attorneys . . . rests in this court, and this court alone." *Id.* at 290, 275 N.W. at 268-69. Pursuant to its power to regulate the bar, the Supreme Court has promulgated rules for the admission and discipline of attorneys, should the need arise. The power to regulate the bar, as an inherent power of the Supreme Court, is judicial in nature. *Id.* "The practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government." *Id.* at 289, 275 N.W. at 268. See, also, *Simons v. Bellinger*, 643 F.2d 774 (D.C. Cir. 1980) (stating that determining who is authorized to practice law is inherent judicial function); *Sassower v. Mangano*, 927 F. Supp. 113 (S.D.N.Y. 1996) (stating that state bar disciplinary proceedings are clearly judicial in nature); *Cohran v. State Bar of Georgia*, 790 F. Supp. 1568 (N.D. Ga. 1992) (stating that state bar disciplinary proceedings are clearly judicial in nature). Inherent powers are "not subject to delegation to committees and representatives, although these agencies may be utilized for investigation

or factfinding purposes and to make recommendations, but the final decision must rest with the court." *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. at 289, 275 N.W. at 268.

In exercising its inherent power to regulate the bar, this court uses the Counsel for Discipline for investigative purposes. The Counsel for Discipline has been given, among other things, the power to investigate allegations of misconduct, prepare and file charges of misconduct against attorneys, and dismiss charges. See Neb. Ct. R. of Discipline 8 (rev. 2000). The exercise of these powers and duties expressly involves discretion and judgment. See *id*. Thus, in performing his or her powers and duties, the Counsel for Discipline is performing a judicial function and is entitled to quasi-judicial immunity. Rule 22 is merely a recognition of the immunity he or she already possesses.

Were the Counsel for Discipline not granted immunity in performing his or her official duties, he or she would be a probable target for harassing lawsuits. See *Simons v. Bellinger, supra*. Indeed, because the Counsel for Discipline investigates and prosecutes only attorneys, who could use their familiarity with the legal process to explore vindication in other forums, the Counsel for Discipline would be a more likely target for litigation than judges or prosecutors. See *id*. Thus, immunity is an appropriate shield.

The question remains, however, whether the Counsel for Discipline was entitled to immunity for his actions in this case. Appellants allege that the Counsel for Discipline was negligent in failing to investigate the allegations of misconduct against Malcom. The investigation of attorney misconduct is at the core of the Counsel for Discipline's official duties. Thus, the Counsel for Discipline was performing a judicial function, and it is about his performance of this function that appellants complain. Because the Counsel for Discipline is immune from suit for the performance of his official duties, he is thus entitled to quasi-judicial immunity in this case.

This determination is consistent with the case law in other jurisdictions. See, *Simons v. Bellinger, supra* (holding that members of committee on unauthorized practice of law were entitled to immunity because they were performing judicial function in determining who was authorized to practice law); *Sassower v.*

*Mangano, supra* (holding that because state disciplinary proceedings are judicial in nature, quasi-judicial immunity bars claims against members of state bar disciplinary and grievance committees); *Eston v. Van Bolt*, 728 F. Supp. 1336 (E.D. Mich. 1990) (holding that members and employees of attorney discipline board and attorney grievance commission served as arm of state supreme court and thus were entitled to quasi-judicial immunity); *Niklaus v. Simmons*, 196 F. Supp. 691 (D. Neb. 1961) (holding that state attorney general, to extent he participated in disbarment proceedings, was entitled to judicial immunity); *Black v. Clegg*, 938 P.2d 293 (Utah 1997) (holding that when state bar and its officials participate judicially in regulation of bar, state supreme court's cloak of judicial immunity reaches far enough to cover them).

Because the Counsel for Discipline is immune, there cannot be vicarious liability on the part of appellee under appellants' sole theory of recovery.

In addition, appellee, as an arm of the Supreme Court, has quasi-judicial immunity in its own right. The instant case is similar to *Bailey v. Utah State Bar*, 846 P.2d 1278 (Utah 1993). In that case, the plaintiffs alleged negligence on the part of the state bar in failing to protect them from a particular attorney. *Id.* The state bar had prepared to file charges against the attorney, but delayed several months in filing them, during which time the attorney caused damages to the plaintiffs. *Id.* The court stated that the bar's duties in regard to discipline were judicial in nature and that to that extent, the bar was entitled to immunity. *Id.* See, also, *Cohran v. State Bar of Georgia*, 790 F. Supp. 1568 (N.D. Ga. 1992) (holding that state bar, as agent of state supreme court, was immune from liability for its conduct with respect to disciplinary proceedings). Because appellee acts under the authority of the Supreme Court and because the Supreme Court enjoys immunity from liability for judicial acts, appellee enjoys quasi-judicial immunity to the extent it is involved in disciplinary proceedings. Therefore, we affirm the trial court's ruling sustaining appellee's demurrer to appellants' petition.

We further determine that the trial court's action in dismissing appellants' petition without granting leave to amend was correct. When a demurrer to a petition is sustained, a court must

grant leave to amend the petition unless it is clear that no reasonable possibility exists that an amendment will correct the defect. *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343 (1998); *Giese v. Stice*, 252 Neb. 913, 567 N.W.2d 156 (1997). We determine that there is no reasonable possibility that an amendment of the petition could overcome the immunity granted to the Counsel for Discipline under rule 22.

## CONCLUSION

We hold that the immunity granted to the Counsel for Discipline prevents suit against appellee for the alleged negligent acts of the Counsel for Discipline. We further determine that there is no reasonable possibility that an amendment to the petition could overcome appellee's immunity. Because these determinations are dispositive of this case, it is not necessary to, and we do not, address the other grounds raised by appellee's demurrer.

AFFIRMED.

HENDRY, C.J., and WRIGHT, J., not participating.