MARGARET CLASEN v. AUGUSTA PRUHS, BY HENRY PRUHS, HER NEXT FRIEND.

FILED JUNE 3, 1903. No. 12,848.

1. **Tort**: ACTION BY GUARDIAN OR NEXT FRIEND. Infants have a right to sue by guardian or next friend, to recover damages for injuries done to the person by the tortious acts of another.

2. ———: EVIDENCE. A preponderance of the evidence is sufficient to prove an issue in civil actions for assault and battery.

3. **Parent and Child**: CORRECTION. A parent, or one standing in the relation of parent, is not liable either civilly or criminally for moderately and reasonably correcting a child, but it is otherwise if the correction is immoderate and unreasonable.

4. ———: ———: QUESTION FOR JURY. It is a question of fact to be determined by the jury whether or not the punishment inflicted was, under all the circumstances and surroundings, reasonable or excessive.

5. **Instruction**: WORD "GIVEN" OMITTED. *Held*, That the omission to write the word "given" on an instruction, signed by the judge, read by him to the jury and delivered with the other instructions for consideration in the jury box, does not constitute reversible error.

6. **Instructions.** Instructions examined, and *held*, not prejudicial.

7. **Rulings on Evidence.** Action of the trial court in the admission and exclusion of·evidence, examined, and *held*, not prejudicial..

8. **Evidence of Ability of Parent to Support Child.** Where it is averred that the parent had necessary means to provide food and clothing for a child and failed to do so, such allegation not being admitted, it is proper to admit proof of the financial ability of the parent to so provide, when such evidence is restricted by instruction to this purpose alone.

9. **Evidence.** Evidence examined, and *held* sufficient to sustain the verdict.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, DISTRICT JUDGE. *Affirmed*.

*Thomas J. Doyle* and *George W. Berge,* for plaintiff in error.

*Jesse B. Strode* and *Edmund C. Strode, contra.*

OLDHAM, C.

This suit was prosecuted by the plaintiff below, a minor, by her next friend, to recover damages for alleged inhuman and cruel treatment suffered while in the care and custody of the defendant. It appears from the record that when plaintiff was about six years of age, she came with her brother from her home in Germany, with the consent of her parents, to make her home with the defendant, who was her maternal aunt, and resided near Hallam, Nebraska; that she remained under the care and protection of the defendant for six or seven years, when the defendant took her back to her parents in Germany and left her there. The following year the plaintiff returned with her parents to America and located near Hallam, and shortly after her return this cause of action was instituted. The allegations of inhuman treatment are that plaintiff was cruelly and unnecessarily tortured, beaten and whipped on numerous occasions and improperly clothed and fed by defendant while under her care and custody, and that such treatment resulted in permanent injuries to her health and growth; all of which was denied by the defendant. It is admitted that during the time the plaintiff lived with the defendant the relationship and authority of defendant over the plaintiff was that of parent over a child. So that the only question at issue in the case was as to whether the plaintiff was subjected to inhuman and brutal treatment in excess of the authority properly reposed in defendant during the time the defendant stood *in loco parentis* to the child. The testimony in the case is exceedingly voluminous and on many points is sharply conflicting. The trial resulted in a verdict and judgment for plaintiff in the sum of $2,000, and defendant brings error to this court.

The first allegation of error to which our attention is called, is as to the right of plaintiff to prosecute this cause by her next friend; the contention being that the parents and not the next friend should have maintained the ac-

tion. This was a suit for injuries to the person, and suits by next friend when brought for the benefit of an infant are provided for by section 36 of our code. It seems to be well established that infants have a right to sue by guardian or next friend, to recover damages done to their person or property by the tortious acts of another. Schouler, Domestic Relations (4th ed.), sec. 427; *Kleffel v. Bullock,* 8 Neb. 336.

The next contention is that as the defendant was charged with matters which, if true, would constitute an offense under the criminal code, it was necessary to prove the averments of the petition beyond a reasonable doubt, and that the court erred in telling the jury that it was incumbent on the plaintiff to prove the allegations of her petition by a preponderance of the evidence, instead of telling it that she must prove them beyond a reasonable doubt. This is asking for a rule not in force in this state, it having been uniformly held by this court, that a preponderance of the evidence proves an issue in any civil case. *First Nat. Bank of Omaha v. Goodman,* 55 Neb. 409. In *Nebraska Nat. Bank v. Johnson,* 51 Neb. 546, it is said:

"A plaintiff in order to recover the proceeds of property stolen by the defendant, is not required to prove the guilt of the latter beyond a reasonable doubt. It is sufficient if he establish the allegations of his petition by a preponderance of the evidence."

This instruction is also criticised because it is alleged that it assumes that plaintiff has sustained some injury and some damage. This is not a fair interpretation of the instruction. The injuries claimed by plaintiff are set out, and then the jury are told that it was incumbent upon plaintiff to establish these injuries and the damages resulting from them, by a preponderance of the evidence.

Paragraph 3, of the instructions given, is objected to because it tells the jury, in substance, that the relationship of plaintiff and defendant, being that of parent to child so far as the issues in this case are concerned, and the defendant having the care, custody and control of the

child, it became the duty of defendant to exercise reasonable care over plaintiff and to so care and provide for her that she might and would, if possible, grow up to womanhood in good health and good character, and do this without treating her cruelly.

It is claimed that this puts an unreasonable and impossible burden upon a parent or one standing *in loco parentis* to a child, and that it would permit an action and recovery for damages at a suit of the child, if it should grow up without a good character, although the parent had used the utmost effort in that direction. We think this a very strained and unreasonable criticism of the instruction, and that no such possible interpretation could have been given it by a jury of sensible men, in a suit in which no damages were alleged because of the want of proper moral instruction to the child, and in which the only injuries complained of were physical torture resulting from cruel punishment and improper food and clothing.

Paragraph 4 is assailed because it tells the jury that cruelty would take place where one, charged with the duty of providing for and protecting another, would abuse her by whipping or punishing her unnecessarily or to excess, or either carelessly or purposely neglect to provide for her those necessaries of life consisting of food, clothing and shelter which her helpless condition would require. This instruction is followed by the 5th, which tells the jury that a discretion is given to a parent or custodian in respect to the character and quality of the food and clothing furnished children, and that it is only when a person, having the custody of a child, fails to provide that food and clothing which is necessary to the child's life or health, or proper growth and development, that such failure would constitute a wrong which the law recognizes. In the 6th paragraph the jury are told:

"One possessed of the duty of rearing a child has a right to give it moderate correction and punishment in a reasonable manner for the child's benefit, for its educa-

tion and discipline. This would be for offenses on the child's part, such as disobedience, or where the child is guilty of something bad or immoral in its nature. Whipping or punishment, however, when administered to an extent greater than is reasonably necessary under the circumstances, would amount to assault, and when so administered one would be responsible for any damages arising therefrom as its proximate result."

All objections urged to these instructions will be considered in one body. It is conceded by counsel for plaintiff in error that the rule laid down in these instructions, as to the duty of a parent to provide suitable food and clothing for the child, is unobjectionable, but the contention is that there was no evidence in this case warranting an instruction on this question, and that it was prejudicial to the defendant to have this matter referred to in the instructions. We have examined the record, and we find that there is testimony offered by plaintiff which, if believed by the jury, would fully warrant a finding that at many times plaintiff was improperly clothed and insufficiently fed, while in the custody of defendant. A cause of action for this neglect of duty was not only alleged in the petition, but it was also supported by the testimony of four witnesses as found in the bill of exceptions. The objection, however, which is seriously and forcibly urged against these instructions is that they take a too much restricted view of the right of a parent, or one *in loco parentis,* to administer corporal punishment to a child. It is said in the brief that these instructions substitute the judgment of the jury for the judgment of the parent, in determining the necessity and extent of the punishment that may be administered for the good of the child. It is further urged that a parent ought to be considered as acting in a judicial capacity when he corrects his child, and should not be held liable, even if the punishment should appear to the triers of fact to be unreasonably severe and in no measure proportionate to the offense; that the only instance in which a parent should be held

liable for the punishment of a child is when he acts in bad faith and from wicked impulses, and when the punishment is of such a nature as to seriously injure the life, limbs or health of the child.   An instruction embodying this view of the law was requested by defendant and refused by the court, and the 4th, 5th and 6th instructions, above set out, were given in its stead.   In addition to what is said in the brief, we have been urged in a most skillful and persuasive oral argument to withhold our commendation from the doctrine set forth in these instructions of the learned trial judge, which, counsel urge, place an unwarranted and unreasonable restriction upon parental authority in the matter of administering punishment for the welfare of a child.

That much of the welfare of society rests on the proper exercise of parental authority is self-assertive, but that there is and should be a reasonable limitation on the right of parents to punish their offspring, is an elemental principle of modern civilization.   The question then is, what is the right, and what the proper limitation of the right, and who shall judge when the right has been exceeded? A parent, teacher or master is not liable either civilly or criminally for moderately correcting a child, pupil or apprentice, but it is otherwise if the correction is immoderate and unreasonable.   1 Clark & Marshall, Law of Crimes, 433; 1 McClain, Criminal Law, sec. 242; 3 Greenleaf, Evidence (16th ed.), sec. 63; 1 Wharton, Criminal Law (10th ed.), sec. 631.   In fact, this rule seems to be universally recognized by the courts of this country.   If the authority to punish be limited by reason and moderation, who, then, on sound principles, should determine whether such authority has been used in excess of its proper limits, the parent administering the punishment, or the triers of fact in a court where complaint has been made? While some authority is cited tending to support the theory that, where the punishment falls short of maiming or disfiguring the body or seriously injuring or endangering life and health, the judgment of the parent is final and he can

not be held to answer, unless it is proved that the punishment was maliciously inflicted—the leading case in support of this doctrine being *State v. Jones*, 95 N. Car. 588, 59 Am. Rep. 282—yet the great weight of American authority seems to be that whether or not the parent, guardian or schoolmaster has administered unreasonable, unnecessary and cruel punishment to a child under his care, is a question of fact to be determined by the jury. 21 Am. & Eng. Ency. Law (1st ed.), 771; *Lander v. Seaver*, 32 Vt. 114, 76 Am. Dec. 156; *Hinkle v. State*, 127 Ind. 490, 26 N. E. 777; *Fletcher v. People*, 52 Ill. 396; *Johnson v. State*, 21 Tenn. 283, 36 Am. Dec. 322; *State v. Washington*, 104 La. 443, 81 Am. St. 141; *Patterson v. Nutter*, 78 Me. 509, 57 Am. Rep. 818; *Commonwealth v. Randall*, 70 Mass. 36. It would, therefore, seem that the learned trial court followed the trend of a long line of well considered cases when he submitted to the jury the question of the reasonableness of the punishment inflicted, and predicated plaintiff's right of recovery on proof of the fact that the punishment administered was unreasonable and unnecessary under all the circumstances.

Complaint is made that the force of an instruction, given at defendant's request, was weakened by reason of the fact that the trial judge through inadvertence failed to mark the instruction as "given." The instruction was read to the jury by the court, it bore the signature of the judge, and was given with all others to the jury for their consideration in the jury box. We can not see how the defendant could have been prejudiced by the mere oversight of the judge in not endorsing the word "given" upon this instruction. *Home Fire Ins. Co. v. Decker*, 55 Neb. 346.

We have examined all the other instructions complained of, and find no prejudicial error in any of them, and do not think we would be justified in unnecessarily extending this opinion by a further discussion of them, since as a whole the instructions seem to have fairly submitted the case to the consideration of the jury.

Numerous objections are urged against the rulings of the trial court on the admission and exclusion of evidence. The trial of this case lasted several days in the lower court, and appears to have been a combat royal from start to finish; each side was represented by learned, able and skilled counsel, who seem to have imbibed the spirit of resentment that was manifested between the parties to the suit. Each witness was carefully examined in chief, and rigidly cross-examined by opposing counsel, but through it all the learned trial judge, with commendable vigilance, seems to have succeeded in preventing anything prejudicial from being injected into the record, by the over zeal of counsel on either side. So that in the matter of exclusion of evidence, we find no prejudicial error in the rulings of the trial court.

It is contended that the court erred in permitting the plaintiff to show by the defendant, that she was possessed of a considerable amount of property. This testimony was admitted, as stated by the court, solely for the purpose of showing that the defendant was financially able to furnish necessary food and clothing for the plaintiff while in her custody. The evidence was restricted to this purpose, and to this purpose alone, by proper instructions given by the court. It was alleged in the petition that defendant was able to furnish proper food and clothing; this allegation was denied in the answer, and defendant did not offer to make this admission before the evidence was admitted. Under these conditions, we think there was no error in the ruling of the trial court.

Complaint is made of the action of the trial court in permitting one of plaintiff's witnesses, Mrs. Axthelm, to testify that she, the witness, had told the defendant what the plaintiff had said to the witness concerning her alleged mistreatment by the defendant. It is urged that this evidence was purely hearsay and of a character exceedingly prejudicial to the defendant, and that it should have been excluded. If this evidence had been admitted in the first instance, we would be inclined to sustain the

contention of defendant's counsel, but an examination of the record shows that when the witness first testified, her evidence was confined within proper limits, and that on the cross-examination of the witness, defendant's counsel went to considerable length into a conversation between defendant and the witness, which conversation was as to the alleged mistreatment of the plaintiff, and then on the reexamination plaintiff was permitted to inquire into the entire conversation. In view of the fact that defendant voluntarily went into this conversation, we do not think she is in a position to complain, because it was all admitted. When one deliberately pulls the lid off of a Pandora's box, he must not complain if plagues stalk forth to harass him.

It is finally urged that the verdict is clearly against the weight of the evidence, and for that reason should be set aside. With reference to this objection, we are constrained to apply the language used by the learned Justice REESE in *Nelson v. Johansen*, 18 Neb. 180, a case similar in nature to the one at bar, when he says:

"It is next alleged that the verdict was against the weight of evidence, and was not supported by sufficient evidence.

"Upon this branch of the case it is sufficient to say that we have carefully read over and examined all the testimony introduced upon the trial, and find it conflicting and quite difficult to harmonize. In fact there was a sharp conflict between the testimony introduced on the part of defendant in error and that presented by plaintiff in error. If the jury believed the testimony of the witnesses produced by the defendant in error, there was sufficient to sustain the verdict. As to the weight of the testimony they were the judges, and the verdict would not be set aside unless clearly and manifestly wrong."

Finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

AMES and HASTINGS, CC., concur.

SEDGWICK, J.

Two of the questions discussed by the commissioner seem to be of sufficient importance to justify further suggestions.

1. Can a minor child, by his next friend, maintain an action to recover damages against one who formerly stood in the relation of parent, for injuries claimed to have been received as a result of excessive and unnecessary punishment administered to the child while the relation of parent and child existed, and while the child was a member of the defendant's family, and in her care and custody?

Judge Cooley in the first edition of his work on Torts, page 171, in speaking of the right of a child to bring a personal action against his own parent, said:

"If he (the parent) plainly exceeds all bounds, he is liable to criminal prosecution, but it seems never to have been held that the child might maintain a personal action for his injury. In principle, there seems to be no reason why such an action should not be sustained; but the policy of permitting actions that thus invite the child to contest the parent's authority is so questionable, that we may well doubt if the right will ever be sanctioned."

The reason for this conclusion is stated by the supreme court of Mississippi in *Hewlett v. George,* 68 Miss. 703, 13 L. R. A. 682:

"So long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid, comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand."

Brutal and inhuman treatment of children is not toler-
ated by the law.   The state will prevent this, and will
change the custody and control of the child if necessary
to that end.   Whether, after the state has so intervened
in the interest of the child, and the child has been placed
under guardianship for the purpose of protection, an ac-
tion might be maintained against an inhuman parent for
damages in behalf of the child, is a different question.   In
such case the reason for the rule would seem to fail.   But,
in a case like the one at bar where the child has been taken
from the custody of the defendant, its foster-mother, no
good reason could be given for refusing to entertain an
action in its behalf for damages, and if the right of action
exists, the form is prescribed by statute:

"The action of an infant must be brought by his guard-
ian or next friend.   When the action is brought by his
next friend, the court has power to dismiss it, if it is not
for the benefit of the infant; or to substitute the guardian
of the infant; or any person, as the next friend."   Code,
section 36.

2. The plaintiff's allegation of cruelty and inhuman
punishment on the part of the defendant is denied in the
answer.   The issue was sharply contested.   The little girl
was the principal witness in her own behalf, and the facts
relied upon in defense are supported, if at all, mainly by
the evidence of the defendant herself.   The evidence of
both of these witnesses necessarily takes a wide range.
They contradict each other at many points.   It was the
duty of the jury to discover the trustworthy evidence, and
cull the facts from the mass of testimony, much of which
must be regarded as untrustworthy.   The defendant ad-
mitted that she inflicted punishment upon the child, but
alleged that it was necessary for the correction of faults,
and was reasonable, and not excessive or cruel.   The
question is discussed in the briefs, as to how far courts
and juries should interfere with parental discretion and
inquire into motives, and the necessity and propriety of
punishment inflicted.   It seems to be held in North Caro-

lina that if a parent acts in good faith, and without malice, and does not inflict permanent injury, the law will not interfere however unmerited and severe the punishment may be. This doctrine does not seem to be supported by precedents from other jurisdictions. In later times it is not thought, as it once was, that so large a latitude of parental authority is necessary. It is generally held that punishment may be excessive and cruel, and therefore unlawful, although it falls short of inflicting permanent injury. On the other hand, some courts seem to have ignored the right and duty of exercising parental discretion, and to have disregarded the consideration of good faith and the absence of passion or malice, as of no importance.

Mr. Bishop, in the earlier editions of his work on criminal law, seems to have regarded this latter view as established by the authorities, although he doubted the soundness of the reasons upon which it was based. 1 Bishop, Criminal Law (5th ed.), sec. 882.

In the later edition, after referring to the conflicting views upon the question, more recent authorities are cited, notably, *Vanvactor v. State,* 113 Ind. 276, 3 Am. St. Rep. 645, and it is said that the "just doctrine" is "that the parental judgment, if honest and without passion or malice, should be taken as *prima facie* establishing the right, and should be overcome only by evidence of passion, of malice, of the use of an improper weapon, or of such excessive severity of punishment as implies the absence of true parental love, or of a due appreciation of parental duty." This statement of the law is well supported by authority. In *Hinkle v. State,* 127 Ind. 490, 26 N. E. 777, the court said:

"The father has the right to administer proper and reasonable chastisement to his child without being guilty of an assault and battery, but he has no right to administer unreasonable chastisement, or to be guilty of cruel and inhuman treatment of his child, and if he does administer unreasonable chastisement, and treats the child

22

cruelly and inhumanly, his acts become unlawful, and if they are such as to constitute an assault and battery, he may be prosecuted and convicted. The law has very wisely left it for the court or jury trying the case to determine whether the chastisement is reasonable and lawful, or unreasonable and unlawful, and when they have passed upon the acts, and found them to be unwarranted, unreasonable, and unlawful, this court will not disturb the verdict or finding, if there be evidence to sustain it."

And in another case, the same court said:

"The law is well settled that a parent has the right to administer proper and reasonable chastisement to his child without being guilty of an assault and battery; but he has no right to administer unreasonable or cruel and inhuman punishment. If the punishment is excessive, unreasonable, or cruel it is unlawful. The mere fact that the punishment was administered by the appellant upon the person of his own child will not screen him from criminal liability. Whether or not the punishment inflicted in this case was excessive or cruel was a question for the jury." *Hornbeck v. State,* 16 Ind. App. 484, 45 N. E. 620.

The supreme court of Tennessee said:

"In chastising a child, the parent must be careful that he does not exceed the bounds of moderation and inflict cruel and merciless punishment; if he do, he is a trespasser, and liable to be punished by indictment. It is not, then, the infliction of punishment, but the excess which constitutes the offense, and what this excess shall be is not a conclusion of law, but a question of fact for the determination of the jury." *Johnson v. State,* 21 Tenn. 283, 36 Am. Dec. 322.

These authorities are not in conflict with the rule suggested by Mr. Bishop. Manifestly the jury must determine whether the punishment inflicted was of such an excessive severity as to imply malice, or the absence of true parental love, but to attempt to put the jury in the place of the parent, and ignore all latitude of discretion,

does violence to the plainest principles underlying the relation of parent and child.

"The little one is placed, helpless and untaught, in the parental hands. The helplessness is alike physical, mental and moral. Parental discipline, rightly understood, is to assist the strivings and aspirations of the child's better nature. And the child, needing this assistance, is therefore, entitled to it. The question of what help of this sort shall be given is better left to the parent than to any other person; because parental affection prompts more strongly than any other to a merciful judgment." Bishop, Criminal Law (8th ed.), sec. 880.

It is not possible to exhibit to the jury the character and disposition of the child, its needs and dangers, its susceptibility to ordinary influences and methods of correction and discipline, or its want of such qualities, as these matters are known to the parent. Instructions which omit to present these considerations to the jury are faulty; if they are so framed as to necessarily convey to the jury the idea that no regard is to be paid to the parental discretion and judgment, and that the whole question is to be determined by the jury upon their general notion of parental duty, without regard to the motive of the parent, or his judgment as to the enormity of the fault of the child, or the degree of punishment necessary to correct it, they are erroneous. The trial court instructed the jury that the relation between plaintiff and defendant "so far as the issues of this cause are concerned, would be like those which exist between parent and child, and the duties that each owe to the other would be the same." And also that:

"Cruelty would take place where one charged with the duty of providing for and protecting another would abuse her by whipping or punishing her unnecessarily or to excess, or either carelessly or purposely neglect to provide for her those necessaries of life, consisting of food, clothing and shelter, which her helpless condition would require."

Possibly, in some respects, the language of these in-

structions might be more elegant, but, so far as they go, the statement of the law is substantially correct. The principal complaint is of the following language contained in another instruction:

"Having the care, custody and control of the child, it became her duty to exercise reasonable care, to so care and provide for her that she might and would, if possible, grow up to womanhood in good health and good character, and do this without treating her cruelly"; and of refusing to give an instruction requested by defendant.

The language last above quoted from the instruction given is, perhaps, indefinite, and standing by itself might have been misleading. To exercise perfect care so that everything possible is done for the good of the child, is perhaps more than can be demanded of human parents. To exercise reasonable effort with the purpose in view, "to so care and provide for her that she might and would, if possible, grow up to womanhood in good health and good character," is a reasonable requirement of one who assumes the relation of parent to a helpless child. In the light of the whole charge of the court to the jury, the latter seems to be the fair construction of the language used. The instruction requested and refused was as follows:

"The jury is instructed that the defendant in this case, having the same dominion over the plaintiff that a parent has over a child, had the legal right to restrain the plaintiff from doing wrong, to chastise her for wrong doing, when acting in good faith, and the facts fairly weighed in the judgment of the defendant, honestly and intelligently exercised, demanded the use of a switch or other similar instrument in punishing her."

There is no doubt that, in the condition of the record, the defendant was entitled to have the jury plainly instructed as to the right and duty of the parent to exercise a reasonable and just discretion in correcting the faults of a child, and that the law will not hold the parent liable for an honest mistake of judgment in estimating the

character of the fault corrected, or in determining the quality and degree of punishment necessary to correct the fault. This discretion of the parent must be confined within reasonable limits. Unnatural and inhuman punishment furnishes conclusive evidence of a malicious motive in the parent administering it. Punishment may be so plainly excessive, although not causing permanent injury, as to overcome the presumption that the parent had solely in view the welfare of the child. So that, after all, the question is whether under all the circumstances of the case, after allowing due latitude for the exercise of parental authority and discretion, the punishment was in fact excessive and unnecessary, and this question must necessarily be determined by the jury. Is the defendant now in a position to complain of the court's refusal to give the requested instruction as reversible error?

In the sixth instruction given, the court told the jury:

"One possessed of the duty of rearing a child has a right to give it moderate correction and punishment, in a reasonable manner for the child's benefit, for its education and discipline. This would be for offenses on the child's part, such as disobedience, or where the child is guilty of something bad or immoral in its nature."

The remainder of the requested instruction, not embraced in the instruction given by the court, is not very clear and definite. It does not directly tell the jury that under some circumstances it might be proper and reasonable to use a switch in correcting a child, and that the parent is allowed discretion in that regard. There was evidence in this case which, if believed by the jury, showed that the child was whipped beyond all reason with a knotted rope, and otherwise excessively punished, and that, too, at times when there was no fault of the child to be corrected. It is not clear that the indefinite and unsatisfactory language of the latter part of the requested instruction, without the explanation that unnatural and inhuman beating would be conclusive evidence of a bad motive, might not mislead the jury. Further instruc-

tion of the character apparently aimed at in the request was desirable; but it is not so clear that the defendant was entitled to have the instruction given, as framed and as requested, as to require a reversal of the judgment because of its refusal.

The conclusion of the commissioner appears to be right, and is approved, and the judgment of the district court

The other judges concur.                    AFFIRMED.