Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/18/2020 08:25 AM CST

Gaspar Nolasco, Personal Representative of
the Estate of Maria E. Nolasco, deceased,
appellant, v. Brennon Malcom, Special
Administrator of the Estate
of Catarina A. Nolasco,
deceased, appellee.

Gaspariny Nolasco, appellant, v. Brennon
Malcom, Special Administrator of the
Estate of Catarina A. Nolasco,
deceased, appellee.

___ N.W.2d ___

Filed September 25, 2020.   Nos. S-19-729, S-19-730.

1. **Immunity.** The scope of a judicially created rule of immunity, including whether such rule should be limited or extended, presents a question of law.
2. **Appeal and Error.** To the extent an appeal presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
3. **Immunity: Parent and Child: Damages.** The doctrine of parental immunity, as it has been articulated in Nebraska, provides generally that an unemancipated minor cannot maintain an action against his or her parents, or any other person standing in that relation to the minor, to recover damages for ordinary negligence, but can maintain an action to recover damages for brutal, cruel, or inhuman treatment.
4. **Immunity: Parent and Child: Negligence.** The doctrine of parental immunity, as adopted and applied in Nebraska, has always been confined to that class of ordinary negligence claims involving conduct related to parental authority, discretion, or decisionmaking in the supervision, care, and treatment of a minor child.

5. **Immunity: Parent and Child.** The justifications for adopting the doctrine of parental immunity in Nebraska include protecting the proper exercise of parental authority, recognizing parental discretion in raising and disciplining minor children, and protecting against tort liability based on a legitimate parental decision.
6. **Immunity: Parent and Child: Negligence.** When a negligence claim does not pertain in any respect to the exercise of parental authority, discretion, or decisionmaking in the supervision, care, and treatment of a minor child, the claim falls outside the scope of Nebraska's modified parental immunity doctrine.

Appeals from the District Court for Dawson County: James E. Doyle IV, Judge. Reversed and remanded for further proceedings.

Tod A. McKeone, of Heldt, McKeone & Copley, for appellants.

Elizabeth Ryan Cano and Stephen L. Ahl, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellee.

Daniel J. Thayer, of Thayer & Thayer, P.C., L.L.O., and Benjamin I. Siminou, of Siminou Appeals, Inc., for amicus curiae Nebraska Association of Trial Attorneys.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Appellants' automobile negligence actions were dismissed on summary judgment after the district court concluded they were barred by the parental immunity doctrine. In these consolidated appeals, appellants challenge the applicability and the continued viability of that doctrine in Nebraska.[1] After considering the origins, development, and application of the doctrine,

---

[1] See *Pullen v. Novak*, 169 Neb. 211, 99 N.W.2d 16 (1959).

we conclude the automobile negligence claims alleged in these cases fall outside the scope of Nebraska's parental immunity doctrine. We therefore reverse the judgments of the district court and remand the causes for further proceedings.

## I. BACKGROUND

On January 21, 2017, Catarina A. Nolasco was operating a motor vehicle on the interstate near Wood River, Nebraska, when the vehicle left the roadway and entered the ditch, rolling several times. Nolasco's unemancipated minor children were riding in the vehicle with her at the time; her son was seriously injured and her daughter died from injuries sustained in the accident. Nolasco also died as a result of the accident.

The daughter's estate filed a wrongful death and survival action against Nolasco's estate, and the son (now an adult) filed a separate negligence action against Nolasco's estate to recover for his injuries. Both actions alleged that Nolasco's negligent operation of the vehicle caused the accident. Specifically, they alleged Nolasco was negligent in failing to maintain a proper lookout, driving at a speed greater than was reasonable and prudent under the conditions then existing, and failing to exercise proper control over her vehicle.

Nolasco's estate moved for summary judgment in both actions, alleging the doctrine of parental immunity applied to bar the negligence claims. The district court agreed. The court's order discussed and considered several Nebraska cases, including the seminal case of *Pullen v. Novak*,[2] and ultimately determined the doctrine of parental immunity applied to automobile negligence claims. It acknowledged the appellants' request to abrogate or limit the doctrine, but declined to do so, reasoning that any changes to the judicially created doctrine must come from either the Nebraska Supreme Court or the Nebraska Legislature. The district court thus granted

---

[2] *Id.*

summary judgment in favor of Nolasco's estate and dismissed the actions.

Timely appeals were filed by the son and by the daughter's estate. We granted their petitions to bypass and consolidated the cases for purposes of appeal.

## II. ASSIGNMENT OF ERROR

Appellants assign that the district court erred in dismissing the actions based on the parental immunity doctrine.

## III. STANDARD OF REVIEW

[1] The scope of a judicially created rule of immunity, including whether such rule should be limited or extended, presents a question of law.[3]

[2] To the extent an appeal presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[4]

## IV. ANALYSIS

[3] The doctrine of parental immunity, as it has been articulated in Nebraska, provides generally that an unemancipated minor cannot maintain an action against his or her parents, or any other person standing in that relation to the minor, to recover damages for ordinary negligence, but can maintain an action to recover damages for "'brutal, cruel, or inhuman treatment.'"[5] We have described this as a "modified

---

[3] See, *Wood v. McGrath, North*, 256 Neb. 109, 589 N.W.2d 103 (1999) (discussing judgmental immunity rule); *Frey v. Blanket Corp.*, 255 Neb. 100, 582 N.W.2d 336 (1988) (discussing quasi-judicial immunity and parental immunity); *Imig v. March*, 203 Neb. 537, 279 N.W.2d 382 (1979) (addressing spousal immunity).

[4] See *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018).

[5] *Pullen, supra* note 1, 169 Neb. at 223, 99 N.W.2d at 25.

version" of the parental immunity doctrine adopted in other jurisdictions.[6]

In these consolidated appeals, the threshold question is one of first impression: Does Nebraska's modified parental immunity doctrine apply to bar automobile negligence claims brought by unemancipated minors against a parent? To answer that question, we begin our analysis with a general overview of the origins of the judicially created doctrine in the United States. We then discuss the development, recognition, and application of the doctrine in Nebraska. And finally, we consider the parties' arguments as to whether the doctrine applies to bar automobile negligence claims and whether this court should modify or abrogate the doctrine.

## 1. General History of Parental Immunity Doctrine

The doctrine of parental immunity did not originate in English common law,[7] but instead was introduced into American tort jurisprudence by the 1891 Mississippi Supreme Court case of *Hewlett v. Ragsdale*.[8] In *Hewlett*, the court held that an unemancipated minor could not sue her mother for damages sustained when the mother confined the child in a mental institution. *Hewlett* reasoned:

> [S]o long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and

---

[6] *Id.* See, also, *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004).

[7] See, 4 Restatement (Second) of Torts § 895G, comment *b.* (1979); 2 Dan B. Dobbs et al., The Law of Torts § 358 (2d ed. 2011); 2 Stuart M. Speiser et al., The American Law of Torts § 6:49 (2014).

[8] *Hewlett v. Ragsdale*, 68 Miss. 703, 9 So. 885 (1891), *abrogated, Glaskox by and through Denton v. Glaskox*, 614 So. 2d 906 (Miss. 1992).

of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand.[9]

In the decades immediately following *Hewlett*, courts in all but a handful of states[10] adopted some version of the doctrine of parental immunity, but courts were not consistent in articulating either the scope of the doctrine or the public policy reasons justifying its adoption.[11] Common justifications for adopting the doctrine included (1) maintaining family harmony; (2) preserving parental autonomy and authority over the discipline, supervision, and care of children; (3) preventing fraud and collusion between family members; and (4) protecting family

---

[9] *Id.* at 711, 9 So. at 887.

[10] See, e.g., *Petersen v. City and County of Honolulu*, 51 Haw. 484, 462 P.2d 1007 (1969) (declining to adopt doctrine, reasoning minors are entitled to same redress for wrongs as other persons and reasons other jurisdictions give for doctrine not sufficient to overcome that basic right); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974) (abrogating interspousal immunity while clarifying parental immunity was never adopted); *Nuelle v. Wells*, 154 N.W.2d 364 (N.D. 1967) (finding court had never adopted doctrine and should not); *Wood v. Wood*, 135 Vt. 119, 370 A.2d 191 (1977) (answering certified question by holding minor's suit against parent for negligent supervision not categorically barred by unrecognized doctrine of parental immunity).

[11] See Annot., 6 A.L.R.4th 1066, § 2[a] (1981).

assets from depletion in favor of one child at the expense of others.[12]

By the mid-20th century, jurisdictions began to reexamine the blanket doctrine.[13] The Wisconsin Supreme Court's opinion in *Goller v. White*[14] is generally recognized as the first case to abrogate the doctrine,[15] but it was only a partial abrogation. *Goller* abolished blanket parental immunity, but expressly retained immunity where the alleged negligence involved either the exercise of parental authority over the child or "ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care."[16]

After *Goller*, a few states chose to maintain blanket parental immunity,[17] but most jurisdictions moved away from blanket immunity and narrowed the practical application of the doctrine by recognizing a wide variety of exceptions and limitations.[18]

---

[12] See *id.* See, also, 4 Restatement (Second), *supra* note 7, § 895G, comment *c.*; 2 Dobbs et al., *supra* note 7; 2 Speiser et al., *supra* note 7.

[13] See 2 Speiser et al., *supra* note 7.

[14] *Goller v. White*, 20 Wis. 2d 402, 122 N.W.2d 193 (1963).

[15] See 4 Restatement (Second), *supra* note 7, § 895G, comment *j.*

[16] *Goller, supra* note 14, 20 Wis. 2d at 413, 122 N.W.2d at 198.

[17] See, e.g., *Rambo v. Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938); *Blake v. Blake*, 235 Ga. App. 38, 508 S.E.2d 443 (1998); *Vaughan v. Vaughan*, 161 Ind. App. 497, 316 N.E.2d 455 (1974); La. Rev. Stat. Ann. § 9:571 (2016).

[18] See, Annot., 6 A.L.R. 4th 1066, §§ 6 through 12 (1981 & Supp. 2020) (discussing various exceptions to doctrine including claims related to motor vehicle accidents, death of parent or child, breach of duty to general public, parent's business activity, claims covered by liability insurance, and claims against noncustodial parents); 2 Dobbs et al., *supra* note 7.

The most commonly recognized limitation has been to allow suits against parents for the negligent operation of an automobile.[19] Some states adopted a *Goller*-like approach and limited the doctrine to bar tort claims only when the negligent conduct at issue is inherent to the parent-child relationship, such as the

---

[19] See 4 Restatement (Second), *supra* note 7, § 895G, comment *k.* at 430 (noting "most of the cases abrogating the immunity have involved automobile accidents"). Accord, e.g., *Hebel v. Hebel*, 435 P.2d 8, 15 (Alaska 1967) (finding it "unnecessary to attempt to define precisely what scope should be given to the doctrine of parental immunity," but holding minor can sue parent for negligent driving); *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980) (holding minor may sue parent for automobile negligence and declining to otherwise define scope of doctrine); *Glaskox, supra* note 8 (abrogating doctrine as applied to suits for negligent operation of vehicle); *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983) (declining to define scope of doctrine but holding it does not apply to actions based on automobile negligence); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966) (allowing minor to sue parent for negligence in automobile accident); *France v. A. P. A. Transport Corp.*, 56 N.J. 500, 267 A.2d 490 (1970) (abrogating doctrine to allow suits based on negligent operation of motor vehicle and declining to address its continued scope beyond facts presented); *Silva v. Silva*, 446 A.2d 1013 (R.I. 1982) (abrogating doctrine in automobile tort actions); *Smith v. Kauffman*, 212 Va. 181, 183 S.E.2d 190 (1971) (abrogating doctrine in actions for automobile negligence); *Merrick v. Sutterlin*, 93 Wash. 2d 411, 610 P.2d 891 (1980) (abrogating doctrine in automobile negligence action and holding continued application of doctrine in other circumstances should be determined on case-by-case basis); *Lee v. Comer*, 159 W. Va. 585, 224 S.E.2d 721 (1976) (abrogating doctrine regarding actions based on negligent operation of motor vehicle); *Dellapenta v. Dellapenta*, 838 P.2d 1153 (Wyo. 1992) (holding automobile negligence actions do not involve parental authority or discretion and thus fall outside doctrine of parental immunity).

exercise of parental authority, supervision, care, or discipline.[20] Some states have abolished the doctrine in toto,[21] and others

---

[20] See, *Schneider v. Coe*, 405 A.2d 682 (Del. 1979) (noting preservation of parental authority vital to public policy and refusing to abrogate immunity in actions based on negligent supervision of children); *Pedigo v. Rowley*, 101 Idaho 201, 610 P.2d 560 (1980) (retaining doctrine at least in cases of negligent supervision because family plays essential role in welfare of society); *Cates v. Cates*, 156 Ill. 2d 76, 104-05, 619 N.E.2d 715, 729, 189 Ill. Dec. 14, 28 (1993) (holding parental immunity extends only to conduct "inherent to the parent-child relationship" which involves an "exercise of parental authority and supervision over the child"); *Rigdon v. Rigdon*, 465 S.W.2d 921 (Ky. 1970) (abrogating doctrine except where conduct involves reasonable exercise of parental authority over child or where negligence involves providing care and necessities to child); *Black v. Solmitz*, 409 A.2d 634 (Me. 1979) (abrogating doctrine as categorical ban but retaining it for conduct involving care and discipline of children, which parameters can be defined in future cases); *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972) (abrogating doctrine except for conduct involving exercise of reasonable parental authority over child or reasonable parental discretion with respect to provisions of food, clothing, housing, and other care); *Broadwell by Broadwell v. Holmes*, 871 S.W.2d 471, 476-77 (Tenn. 1994) (finding parental immunity limited to conduct that "constitutes the exercise of parental authority, the performance of parental supervision, and the provision of parental care and custody"); *Jilani by and through Jilani v. Jilani*, 767 S.W.2d 671 (Tex. 1989) (holding immunity extends to acts involving exercise of parental authority and provision of care and necessities); *Goller, supra* note 14 (abrogating immunity except for acts of ordinary parental authority and discretion).

[21] See, e.g., *Kirchner v. Crystal*, 15 Ohio St. 3d 326, 474 N.E.2d 275 (1984) (abolishing blanket immunity doctrine in toto with no exceptions); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (abrogating doctrine and noting minors can sue parents in property and contract); *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109 (1980) (abolishing doctrine and noting minors can sue parents in property and contract).

have replaced it with either a "reasonable parent" rule or the approach followed by the Restatement (Second) of Torts.[22]

## 2. Parental Immunity Doctrine
### in Nebraska

The first Nebraska case to formally recognize the doctrine of parental immunity was the 1959 case of *Pullen v. Novak*.[23] In *Pullen*, we identified three earlier cases that established the framework for the doctrine in Nebraska: *Nelson v. Johansen*,[24] *Clasen v. Pruhs*,[25] and *Fisher v. State*.[26] All three cases involved claims of cruel parental treatment of a minor child.

---

[22] See 4 Restatement (Second), *supra* note 7, § 895G, comment *k.* at 431 (rejecting tort immunity between parent and child based solely on relationship but recognizing not all acts or omissions undertaken in course of parent-child relationship will result in liability because some conduct is protected by parental discipline privilege and, to be tortious, parental conduct should be "palpably unreasonable"). See, e.g., *Broadbent v. Broadbent*, 184 Ariz. 74, 907 P.2d 43 (1995) (holding status as parent does not bar suit, but adopting reasonable parent test for suits of minors against parents); *Gibson v. Gibson*, 3 Cal. 3d 914, 479 P.2d 648, 92 Cal. Rptr. 288 (1971) (overruling prior adoption of doctrine and adopting reasonable and prudent parent test); *Rousey v. Rousey*, 528 A.2d 416 (D.C. 1987) (declining to adopt doctrine and instead endorsing approach of 4 Restatement (Second), *supra* note 7, § 895G); *Anderson v. Stream*, 295 N.W.2d 595 (Minn. 1980) (abolishing doctrine and adopting reasonable parent standard); *Hartman by Hartman v. Hartman*, 821 S.W.2d 852 (Mo. 1991) (abrogating doctrine and adopting reasonable parent test); *Winn v. Gilroy*, 296 Or. 718, 681 P.2d 776 (1984) (agreeing with 4 Restatement (Second), *supra* note 7, § 895G, approach and focusing on nature of parent's negligent act).

[23] *Pullen, supra* note 1.

[24] *Nelson v. Johansen*, 18 Neb. 180, 24 N.W. 730 (1885).

[25] *Clasen v. Pruhs*, 69 Neb. 278, 95 N.W. 640 (1903).

[26] *Fisher v. State*, 154 Neb. 166, 47 N.W.2d 349 (1951).

Well over a century ago, in *Nelson*,[27] we considered a neg-ligence claim brought on behalf of a 10-year-old girl who was sent by her parents to work for and live with the defendant and his family. It was alleged the defendant sent the child out in bitterly cold weather to walk some distance back to her par-ent's home without sufficient clothing, which caused her to become "badly frozen" and remain bedridden in "great pain" for a long time.[28] We affirmed the jury verdict in favor of the child, reasoning in part that the defendant stood in the relation of the child's parent and it was his "duty to see that she was properly clothed [and if] he failed in this through negligence he would be liable for the consequences."[29]

The 1903 case of *Clasen*[30] was the first Nebraska case to expressly limit tort recovery by minors against parents. In *Clasen*, a 6-year-old child was sent by her parents in Germany to live with an aunt in Nebraska. Eventually, the aunt returned the child to her parents, after which the child, through a next friend, sued the aunt seeking damages for cruel and inhuman treatment. It was alleged the aunt had unnecessarily beaten, tortured, and whipped the child, and had denied her proper food and clothing, causing permanent injury to her health and growth. The jury returned a verdict in favor of the child. On appeal, the aunt admitted she stood in loco parentis to the child but argued that a parent should not be held liable in tort for correcting a child unless the parent acted with "wicked impulses" or the punishment was "of such a nature as to seri-ously injure the life, limbs or health of the child."[31] We noted there was some authority for a rule that a parent cannot be

---

[27] *Nelson, supra* note 24.

[28] *Id*. at 181, 24 N.W. at 730.

[29] *Id.* at 183, 24 N.W. at 731.

[30] *Clasen, supra* note 25.

[31] *Id*. at 283, 95 N.W. at 642.

held liable for punishment that "falls short of maiming or disfiguring . . . or seriously injuring or endangering life and health"[32] of the child. But we declined to adopt such a rule, preferring instead to follow "the trend of a long line of well considered cases"[33] that predicated the child's right of recovery on proof that the parental treatment was unreasonable or cruel. We reasoned:

> That much of the welfare of society rests on the proper exercise of parental authority is self-assertive, but that there is and should be a reasonable limitation on the right of parents to punish their offspring, is an elemental principle of modern civilization. The question then is, what is the right, and what [is] the proper limitation of the right, and who shall judge when the right has been exceeded?[34]

*Clasen* answered that question by announcing the rule that "[a] parent, teacher or master is not liable either civilly or criminally for moderately correcting a child, pupil or apprentice, but it is otherwise if the correction is immoderate and unreasonable."[35] This principle from *Clasen* would eventually be cited by this court as support for both the parental immunity doctrine[36] and for the related parental discipline privilege.[37]

---

[32] *Id.*

[33] *Id.* at 284, 95 N.W. at 642.

[34] *Id.* at 283, 95 N.W. at 642.

[35] *Id.*

[36] *Pullen, supra* note 1.

[37] See, e.g., *Cornhusker Christian Ch. Home v. Dept. of Soc. Servs.*, 227 Neb. 94, 106, 416 N.W.2d 551, 560 (1987) (recognizing that rule announced in *Clasen* was "a restatement of the common-law rule that was later codified in the criminal defense provision of § 28-1413"). See, also, 1 Restatement (Second) of Torts, §§ 147 and 150 (1965) (regarding parental discipline privilege).

In *Fisher*,[38] a mother was charged with manslaughter after her 4-year-old son died. The mother admitted hitting the child with a stick when he was disobedient, but she maintained the punishment was moderate and appropriate. The State offered medical evidence that an examination conducted a few hours after the child's death revealed he was extremely malnourished and had abrasions, contusions, and lacerations on his face, neck, arms, chest, and scalp. His scalp was reportedly twice the normal thickness due to the formation of scar tissue caused by repeated trauma. A doctor testified the cause of death was repeated trauma to his head and malnutrition. We affirmed the mother's manslaughter conviction, reiterating the general principle announced in *Clasen* that a parent or one standing in the relation thereof "'is not liable either civilly or criminally for moderately and reasonably correcting a child, but it is otherwise if the correction is immoderate and unreasonable . . . .'"[39]

### (a) *Pullen v. Novak*

The principles articulated in *Nelson*, *Clasen*, and *Fisher* were all cited as support when this court formally recognized the doctrine of parental immunity in *Pullen*.[40] In that case, a toddler was injured when he was struck by a backing vehicle in his parents' driveway while in his father's care. The vehicle that struck the child was being driven by the father's friend, who at the time was helping the father return a customer's vehicle that had been serviced at the repair shop where the father worked.

Through a next friend, the toddler brought a negligence action against his father, the father's friend, and the father's

---

[38] *Fisher, supra* note 26.

[39] *Id*. at 176, 47 N.W.2d at 355.

[40] See *Pullen, supra* note 1, citing *Nelson, supra* note 24; *Clasen, supra* note 25; and *Fisher, supra* note 26.

employer. The father was dismissed from the action on grounds the toddler, "being an unemancipated minor child as shown in the petition, has no right of action against the parent for the negligent tort of such parent."[41] The father's employer was subsequently dismissed on summary judgment, and the claim against the father's friend proceeded to trial but was dismissed by the court at the close of the plaintiff's evidence. The plaintiff appealed, assigning error to the dismissal of the claims against the friend and the employer, but not the father.

In addressing whether the father's employer could be vicariously liable for the toddler's injuries, we noted such liability depended on whether the father could himself be liable in tort to his minor son. On that question, we first considered parental immunity cases from other jurisdictions, observing:

> The cases from other jurisdictions run strongly to the effect that an unemancipated minor, such as appellant was and is, cannot maintain an action against his parent, or any other person standing in that relation to the minor, to recover damages for negligence . . . . The reason for the rule is stated in *Meece v. Holland Furnace* Co., 269 Ill. App. 164, as follows: "It is a rule of common law based upon public policy that a minor child cannot sue his father in tort unless a right of action is authorized by statute."[42]

We then cited *Nelson*, *Clasen*, and *Fisher* for the proposition that "Nebraska has adopted a modified version of this rule."[43] The rule we articulated in *Pullen* was not one of blanket immunity. Rather, we announced a rule that allows unemancipated minors to recover from a parent in tort "'where the child is subjected to . . . brutal, cruel, or inhuman treatment,'"

---

[41] *Pullen, supra* note 1, 169 Neb. at 214, 99 N.W.2d at 20.

[42] *Id*. at 223, 99 N.W.2d at 25.

[43] *Id*.

but which generally prohibits minors from "maintain[ing] an action against his parents, or any other person standing in that relation to the minor, to recover damages for ordinary negligence."[44]

Until the instant appeals, we have not been asked to limit the parental immunity rule announced in *Pullen*. But we have, in two reported opinions we address next,[45] discussed the possibility of expanding the doctrine's application.

### (b) Post-*Pullen* Cases

In *Frey v. Blanket Corp.*,[46] we discussed the potential applicability of the parental immunity doctrine to the ordinary negligence of court-appointed guardians in the performance of their duties on behalf of their ward. In *Frey*, the guardian placed the adult ward in an institution, where a roommate later fatally assaulted her. The ward's estate sued the guardian for negligently failing to supervise the ward's placement and living conditions. The trial court granted the guardian's motion for summary judgment, finding the doctrine of quasi-judicial immunity applied and entitled the guardian to absolute immunity from suit.

On appeal in *Frey*, we concluded quasi-judicial immunity did not apply to the guardian merely because she had been court appointed. We also suggested that quasi-judicial immunity was not necessary to protect court-appointed guardians from exposure to liability for ordinary negligence in the performance of their duties, reasoning that a guardian's duty to a ward was "equivalent to that owed by a parent to an unemancipated minor child."[47] We noted that *Clasen* and

---

[44] *Id*. at 223, 224, 99 N.W.2d at 25.

[45] See, *Richards, supra* note 6; *Frey, supra* note 3.

[46] *Frey, supra* note 3.

[47] *Id*. at 107, 582 N.W.2d at 341.

*Pullen* recognized that a minor may recover against a parent in tort only for brutal, cruel, or inhuman treatment, and we suggested that parental immunity may protect court-appointed guardians for ordinary negligence in supervising their wards. But *Frey* reversed the judgment and remanded the cause for further proceedings without actually applying the parental immunity doctrine.

In *Richards v. Meeske*,[48] we again discussed the parental immunity doctrine without applying it. In that case, a 9-year-old girl was injured when her father allowed her to operate an all-terrain vehicle on the farm where he lived and worked. A negligence action was brought on behalf of the child against her father and the owner of the farm. The farm owner successfully moved for summary judgment, and the trial court certified the ruling as final for purposes of appeal.[49] We reversed the summary judgment, finding the lower courts had not analyzed the claim against the farm owner using the proper premises liability framework. But our opinion also addressed an issue the lower courts had not considered: whether the farm owner had a duty to protect the child from the allegedly negligent parenting decision of her father. In that regard, we observed the parental immunity doctrine might also limit the landowner's duty:

> Here, a policy consideration might prevent the imposition of a duty on [the landowner] to protect a child lawfully on the land from negligent parenting decisions . . . . Courts have traditionally recognized that parents are entitled to discretion in how they raise and discipline their children. As a result, courts have been hesitant to impose tort liability because of a legitimate parental decision. This court, for example, has adhered to a modified

---

[48] *Richards, supra* note 6.

[49] See Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).

version of the parent-child tort immunity, holding that a child cannot recover in tort from his or her parent unless "'the child is subjected to . . . brutal, cruel, or inhuman treatment.'" *Pullen v. Novak*, 169 Neb. 211, 223, 99 N.W.2d 16, 25 (1959). See, also, *Frey v. Blanket Corp.*, 255 Neb. 100, 582 N.W.2d 336 (1998).[50]

*Richards* questioned whether the public policy interest underpinning the parental immunity doctrine "suggests that possessors of land should not be required to protect a child lawfully on the land from the negligent parenting decisions of the child's parent, at least when those decisions are not palpably unreasonable."[51] But *Richards* ultimately decided it was not appropriate to answer that question, in part because the claim against the child's father was still pending before the trial court. We thus reversed the summary judgment and remanded the cause for further proceedings without expressing an opinion on whether Nebraska landowners have a duty to protect a child lawfully on the land from negligent parenting decisions.

### 3. Arguments of Parties

Appellants present two basic arguments in support of their request to reverse the decisions of the district court. First, they argue the parental immunity doctrine, as applied in Nebraska, only precludes tort actions by unemancipated minors against their parents for negligent acts involving the exercise of parental discretion. Appellants argue that our cases have never applied the doctrine to an automobile negligence claim, and they suggest such claims do not ordinarily implicate the exercise of parental discretion or authority. As such, they suggest the district court erred by expanding the doctrine to bar automobile negligence claims.

---

[50] *Richards, supra* note 6, 268 Neb. at 911-12, 689 N.W.2d at 346.

[51] *Id*. at 912, 689 N.W.2d at 346.

Alternatively, appellants argue that if Nebraska's parental immunity doctrine does broadly bar all negligence actions by minors against their parents except those involving cruel or inhuman treatment, then either it should be modified to permit automobile negligence actions like the ones at issue here or it should be abrogated altogether. In support of this alternative argument, appellants generally suggest that the doctrine is outdated and that the national trend is to either limit or abrogate parental immunity. They also argue that the doctrine, if applied to bar automobile negligence cases by a child against a parent, is inconsistent with the Legislature's 2010 repeal of the guest statute in Nebraska.[52]

Appellee responds that the district court correctly applied the parental immunity doctrine to bar the instant automobile negligence actions. Appellee argues, "A fair reading of *Pullen*, and of Nebraska precedent as a whole, shows that Nebraska has long adopted a broad parental-immunity doctrine that applies to all general-negligence claims."[53] Appellee opposes abrogation or modification of Nebraska's parental immunity doctrine, arguing the historical justifications for the doctrine remain applicable to modern families. Appellee also suggests the Legislature's repeal of the guest statute did not reference or impact the continued viability of the parental immunity doctrine in Nebraska.

### 4. Does Nebraska's Modified Parental Immunity Doctrine Apply to Bar Automobile Negligence Claims?

As stated, the modified parental immunity doctrine as articulated in *Pullen* bars unemancipated minors from suing a parent, or one standing in that relation, for conduct involving

---

[52] See 2010 Neb. Laws, L.B. 216, § 1 (repealing Neb. Rev. Stat. § 25-21,237 (Reissue 2008) effective July 15, 2010).

[53] Brief for appellee in cases Nos. S-19-729 and S-19-730 at 5.

"ordinary negligence,"[54] but allows such suits when the conduct involves "'brutal, cruel, or inhuman treatment.'"[55] It is apparent, then, that Nebraska's doctrine is not a blanket bar on all negligence claims because it expressly allows tort claims alleging brutal, cruel, or inhuman treatment of a child by a parent. But we have not had occasion to precisely define the class of "ordinary negligence" claims to which the doctrine does apply.

Appellee argues Nebraska's doctrine broadly bars all "general-negligence claims"[56] except those alleging brutal, cruel, or inhuman treatment. Appellants disagree and argue that Nebraska's doctrine has always been limited to that class of negligence claims involving parental discretion in the treatment of their child.

[4] We conclude it is not necessary, in this case, to define the outermost limits of Nebraska's modified parental immunity doctrine. But we generally agree with appellants that the doctrine, as adopted and applied in Nebraska by this court, has always been confined to that class of ordinary negligence claims involving conduct related to parental authority, discretion, or decisionmaking in the supervision, care, and treatment of a minor child.

*Pullen* announced and applied the doctrine to bar a claim related to a father's conduct in failing to supervise his toddler in the driveway.[57] *Clasen* and *Nelson* both allowed tort recovery by a child who was injured by the mistreatment of someone standing in loco parentis.[58] And to the extent our post-*Pullen* cases discussed the potential application of the parental

---

[54] *Pullen, supra* note 1, 169 Neb. at 224, 99 N.W.2d at 25.

[55] *Id*. at 223, 99 N.W.2d at 25.

[56] Brief for appellee in cases Nos. S-19-729 and S-19-730 at 5.

[57] See *Pullen, supra* note 1.

[58] See, *Clasen, supra* note 25; *Nelson, supra* note 24.

immunity doctrine in other contexts, *Frey* involved applying the doctrine to the conduct of a court-appointed guardian who was alleged to have negligently supervised her ward and *Richards* considered applying the doctrine to limit a landowner's duty to protect children on the land from allegedy negligent parental decisionmaking regarding the child.[59]

[5] All of our reported opinions developing, applying, and discussing the doctrine have involved allegations of negligence relating directly to the treatment or supervision of a child or ward by a parent or one standing in relation to a parent. Stated differently, we have neither applied nor discussed applying the parental immunity doctrine to conduct that did not involve the exercise of parental authority, discretion, or decisionmaking regarding the supervision, care, and treatment of a minor child. And our application of the doctrine has been entirely consistent with the expressed reasons for adopting a modified immunity rule in Nebraska: to protect "the proper exercise of parental authority,"[60] to recognize that "parents are entitled to discretion in how they raise and discipline their children,"[61] and to protect against "tort liability because of a legitimate parental decision."[62] We consider these justifications for the doctrine to be as valid today as when *Clasen* and *Pullen* were decided.

Consequently, because appellants are correct that this court has never applied the parental immunity doctrine beyond that class of claims alleging ordinary negligence in the exercise of parental authority, discretion, or decisionmaking in the supervision, care, and treatment of a minor child, we agree there is no need to expressly modify the doctrine to exclude automobile

---

[59] See, *Richards, supra* note 6; *Frey, supra* note 3.

[60] *Clasen, supra* note 25, 69 Neb. at 283, 95 N.W. at 642.

[61] *Richards, supra* note 6, 268 Neb. at 911, 689 N.W.2d at 346.

[62] *Id.*

negligence cases. Claims of negligence in the operation of a motor vehicle rarely involve the exercise of parental authority or discretion in the supervision, care, and treatment of a child,[63] which likely explains why Nebraska has no reported cases in which the parental immunity doctrine has been applied to such a case.

[6] In the instant appeals, the allegations of negligence against Nolasco were limited to driving at an unreasonable speed, failing to keep a reasonable lookout, and failing to exercise proper control of her vehicle. Because none of this alleged conduct pertains in any respect to the exercise of parental authority, discretion, or decisionmaking in the supervision, care, and treatment of a minor child, the claim falls outside the scope of Nebraska's modified parental immunity doctrine.

We therefore hold that the negligence actions in this case, as currently alleged, are not barred by the doctrine of parental immunity and should not have been dismissed on that basis. And because the negligence claims presented here do not actually implicate the continued viability of the parental immunity doctrine, we leave for another day the question whether Nebraska's modified parental immunity doctrine should be revisited in any respect.

### V. CONCLUSION

For the foregoing reasons, we reverse the summary judgments in favor of Nolasco's estate and remand the causes to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

HEAVICAN, C.J., not participating.
CASSEL, J., concurs in the result.

---

[63] See, e.g, *Cates, supra* note 20; *Winn, supra* note 22; *Dellapenta, supra* note 19.